8722

BROOM v. ATLANTIC COAST LINE R. R. CO.

1. CONTINUANCE—DISCRETION.—That a trial Judge consulted other attorneys at the bar as to the propriety of continuing this and other cases beyond the term on account of the illness of counsel, does not of itself tend to show abuse of discretion.

2. EXPERT EVIDENCE.—Witnesses who testify that they are familiar with a grade and have had experience in handling cars are qualified to testify whether a lever car would stand on that grade without being chocked, although they had never handled that kind of car.

3. CARRIER—NEGLIGENCE.—Evidence that a passenger train came up on a track a few minutes after the employees left the point where it was derailed by a nut on the rail will support a verdict based on negligence of the carrier.

4. IBID.—DAMAGES.—There being no issue as to an honest misapprehension of the plaintiff as to his condition, the charge that he could recover for nervous breakdown caused by the injury alleged was all the carrier could require.

5. IBID.—NEGLIGENCE.—The charge here complained of is held not to have led the jury to believe that for the railroad company to relieve itself of liability, it must produce a witness who saw the nut which

derailed the train placed on the track by one not in its employ, but that it must show that some one other than its employees did it.

6. IBID.—PASSENGER—MAIL CLERK—PRESUMPTIONS.—Where a mail clerk is injured by the wreck of a railroad train, the presumption is he was injured by the negligenec of the carrier.

Before GAGE, J., Sumter, July, 1913.    Affirmed.

Action by Sam'l M. Broom against Atlantic Coast Line R. R. Co.    Defendant appeals.

*Mr. P. A. Willcox, Mark Reynolds* and *Lucian W. McLemore,* for appellant, cite: *Presumption of negligence is rebuttable:* 55 S. C. 389; 77 S. C. 55; 83 S. C. 53. *Expert evidence:* 59 S. C. 311; 90 S. C. 296.

*Messrs. L. D. Jennings, John H. Clifton* and *R. D. Epps,* contra.   *Messrs. Jennings* and *Epps* cite: *No abuse of discretion in ordering the case to trial:* 75 S. C. 150.   *As to expert evidence:* 59 S. C. 311; 32 S. C. 127; 62 S. C. 281.

January 13, 1914.   The opinion of the Court was delivered by

MR. JUSTICE FRASER.   This is an action for damages. The plaintiff was mail clerk on a passenger train of the defendant.   As the train approached Creston, a station on the defendant's road, the train was derailed.   There is no dispute as to the cause of the derailment.   There was a nut on the rail and when the wheel struck the nut, it was thrown off the rail and produced the wreck.   The track between and at the place of the accident and Creston was down grade.   There were three questions in the case:

1st. Should the motion for continuance have been granted?

2d. How did the nut get on the track?

3d. Did the wreck produce injury to the plaintiff?

This case was tried and resulted in a judgment for the plaintiff. From this judgment the defendant appealed upon six exceptions, which will be considered in order.

I. "In overruling defendant's motion for continuance, in that upon the showing, made defendant's counsel were entitled to have the case continued until the following term, and it was abuse of discretion not to grant the motion." This exception cannot be sustained.·

It is true his Honor consulted other attorneys at the same bar, as to the propriety of continuing this and other cases because of the illness of one of defendant's counsel, but in the absence of any showing to the contrary, we must assume that there were attorneys at the Sumter bar upon whose discretion he could rely. The affidavit of Mr. Jennings was not before the Court and could not have been the basis of his Honor's action. It will be further noted that the advice which Judge Gage received only confirmed his determination and did not control it. The great skill shown by the remaining counsel in the conduct of the case was full vindication of the soundness of his judgment.

· II. 2. "In permitting the witness, Cuttino, to give his opinion as to whether or not a hand or lever car would stand on the grade involved in the case; whereas, such testimony should have been excluded upon the objection of the defendant, as it involved merely the expression of an opinion, and the witness was not shown to be qualified to give such an opinion, the objection, ruling and evidence being as follows:

" 'From the experience you had with hand cars, tell the jury whether or not, in your opinion, a hand car or lever car would stand on that particular track anywhere there— leaving the public road coming towards Lone Star, without being chocked?

" 'Mr. McLemore: We object. The witness has not qualified as an expert to testify on that.

" 'Court: I don't think it takes an expert to testify to that.

" 'Go ahead, Mr. Cuttino.

" 'Why, anywhere in the neighborhood of that road, forty or fifty feet, going towards Lone Star, I don't believe a car would stand there of its own weight, if not chocked.' "

3. "In permitting the witness, Finn, to give his opinion as to whether or not a hand car would stand on the grade involved in the case; whereas, such testimony should have been excluded upon the objection of defendant, as it involved merely the expression of an opinion, and the witness was not shown to be qualified to give such an opinion, the objection, ruling and evidence being as follows:

" 'Tell the jury whether, in your opinion, a hand car being pushed over this railroad up there, and get lumber off, whether it would stand on that grade without being chocked?

" 'Mr. McLemore: I object. No foundation laid so as to allow this witness to testify whether a hand car would stand that way. He is a locomotive engineer, running a train, and has not testified he ever used one in his life.

" 'Have you ever used a lever car?

" 'Court: I think he can testify. Note the objection.

" 'Go on and tell the jury whether, in your opinion, the hand car in the ordinary use would stand on that grade without being chocked?

" 'No, sir, I don't think, ordinary use put to, it would stand there without somebody to hold it on.' "

These exceptions will be considered together and neither can be sustained. Both witnesses testified that they were familiar with the grade. Both had had experience with the handling of cars. It is true they had not handled this particular kind of car, but the principles governing them were said to be the same and the opinion was competent.

III. 4. "In overruling defendant's motion for direction of verdict in its favor made at the close of all the evidence upon the ground that there was no evidence that the derail-

ment of the train was caused by the negligence of defendant, and in overruling motion for new trial upon the same ground; whereas, the motion should have been granted upon the grounds and for the reasons urged in support thereof."

The statement of Judge Gage in ruling on these motions is clear and convincing, and is as follows: "Court: I read that during the argument. I have seen many a man convicted on circumstances less strong that these. The proof showed that at the outside, twenty minutes after the hands left the locus—and perhaps in fifeen minutes, between fifteen and twenty-eight minutes, a passenger train came along. This thing occurred in broad open daylight. The testimony did not warrant any suspicion that a third party put the nut on the track." This exception is overruled.

IV. 5. "In refusing to charge defendant's third request, as follows: 'If the plaintiff is suffering from a nervous trouble, such as *hysteria,* not caused directly by injury, but which has come from the belief that he was injured when he was not injured, then the plaintiff cannot recover, and this is true although the plaintiff's belief may be honestly formed or by suggestion from others.' The error being that the request contained a sound proposition of law, applicable to the case, and its refusal was prejudicial to defendent."

His Honor charged the jury as follows: "I will state to you that before there can be any recovery by the plaintiff, you must not only find that the plaintiff is in the condition set forth in the complaint, but that he did actually receive the injuries set forth in the complaint, which injuries were solely responsible for his present condition. I further charge you that in reaching your decision in these matters, you must base your deliberations upon the actual facts as disclosed by the testimony, and must not leave same to conjecture or speculation. If you should find that the plaintiff

is in a highly nervous condition, unless, from the testimony, you can assign his condition to be due solely to such injuries as he is alleged to have received on September 25, 1912, there can be no recovery by the plaintiff."

That covered all of this request that his Honor could charge. There was no issue as to an honest misapprehension by the plaintiff of his condition.

This exception cannot be sustained.

V. 6. "In refusing to charge defendant's fourth request as submitted, and in modifying it, the request and the modification being as follows: 'If you find that the accident in which plaintiff is alleged to have been injured was caused by a train being derailed due to an obstruction on the rail, such as a nut, and you find that this obstruction was placed on the rail by some one not connected with the defendant, railroad company, your verdict must be for the defendant.' I charge you that with this modification: It is manifest to you as men of common sense that the railroad company is only liable for its own acts, and if this thing was done by what you call the public enemy, that is to say, if some one was bent upon mischief—mischievous frame of mind—seen at the railroad track shortly before the engine came along and put the obstruction upon the track that would throw the train off and wreck it, then that would be the act of another and not the railroad company. If that is alleged to be the cause, by the defendant railroad company, and if you are satisfied that the wreck was caused by the instrumentalities of the railroad company, then the railroad company must prove that the accident occurred, was the act of another except the act of its own agent.'"

"The error being that the request contained a sound proposition of law applicable to the case, and it was prejudicial to defendant for the Court to refuse so to charge and to impress the jury with the view that the request was erro-

neous and needed modification. The modification was erroneous and prejudicial because it could not have affected the jury in itself otherwise than to impress them with the idea that it was necessary for the defendant to have proved positively and directly (and not negatively by attempting to eliminate the fact of the wreck having occurred by the leaving of the nut on the rail by the section force, which plain-- tiff attempted to prove by circumstantial evidence) the placing of the nut by some outside person the only suggestion by way of modification of defendant's request contained in the language of the Court tending to plant in the minds of the jury the need of evidence showing a present witnessing of the act of some outside person in placing the obstruction."

It is not entirely clear just what is the error claimed, appellant itself being the judge. Appellant says in its argument: "Again, we are unable to perceive what modification was made except in the portions we have italicized."

If the appellant cannot, after mature deliberation and careful study, point out with certainty the error, it is certainly proper to hold that the jury would not perceive the difference. The trial Judge is not bound to charge the exact language of a request. It seems, therefore, that the request was substantially charged. There are two variations suggested and we consider those. 1st. That his Honor charged that it was necessary for the defendant to prove by a witness that saw the public enemy put the nut on the track. The language is not susceptible of that construction. The request assumed that some one had "placed" the nut on the track, *i. e.,* deliberately put the nut on the track. Now take the charge as a whole, then the word "seen" means if there be proof of the presence of a mischievous person who put the nut on the track, then the railroad would not be liable.

2. "Then the railroad company must prove that the accident occurred was the act of another except the act of its own agent."

There is no contention that the mail clerk is not a passenger. The rule, unquestionably, is that where a passenger is injured by the instrumentality of the carrier, there is a presumption of negligence and the carrier must prove the absence of negligence. Here it was admitted that the wreck was caused by an obstruction on the track, to wit, the nut on the track, and the presumption is that the obstruction was due to the negligence of the railroad, and it must show that it was the act of another.

The judgment is affirmed.